IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY LOCKE, | : | NO. 2:07-cv-2378-JCJ |
|     Petitioner | : | |
| | : | |
| VS. | : | |
| | : | |
| JOHN PALAKOVICH, | : | |
|     AND | : | |
| THE DISTRICT ATTORNEY OF | : | |
| THE COUNTY OF PHILADELPHIA, | : | |
|     AND | : | |
| THE ATTORNEY GENERAL OF | : | |
| THE STATE OF PENNSYLVANIA, | : | |
|     Respondents | : | |

<u>REPORT AND RECOMMENDATION</u>

CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE

Currently pending before the Court is a Petition for Writ of Habeas Corpus, as well as a Petition for Stay and Abeyance, filed by a prisoner incarcerated in the State Correctional Institution Smithfield, in Huntingdon, Pennsylvania. For the reasons which follow, it is recommended that the petition be denied.

I.   PROCEDURAL HISTORY

Following a jury trial before the Honorable Renee Cardwell Hughes of the Philadelphia Court of Common Pleas, petitioner was convicted, on April 4, 2003, of intimidation of witnesses or victims, aggravated assault, firearms not to be carried without a license and altering or obliterating marks or identification. The jury acquitted him of attempted murder. The facts underlying the convictions were summarized by the trial judge as follows:

> On July 18, 2002, Anthony Locke (the Appellant) and Sherine Scott (the victim) were in a relationship. (N.T. 4/2/03, p. 59). On that day, they got into a heated argument. (N.T. 4/2/03, pgs. 60-61). During the argument Anthony Locke punched Ms. Scott and she became irate and began to curse. (N.T. 4/2/03, p. 65). The couple's three-year old baby girl Nydera was present while this confrontation was happening. (N.T. 4/2/03, p. 57). Mr. Locke responded, "I didn't want to have to do this" and at that point he went into the book bag he was holding and pulled out a .40 caliber handgun, pointed the gun at Ms. Scott's head and fired, but the bullet missed her head. (N.T. 4/2/03, pgs. 69-71). Ms. Scott, however, fell to the floor and pretended to be dead. Anthony Locke put the gun back in the bag and left th house. (N.T. 4/2/03, p. 73-74, 162). He later told Ms. Scott's friend, Naja Hinton, that he shot at Ms. Scott and that he wanted to kill her (Ms. Scott). (N.T. 4/2/03, pgs. 208). The appellant was apprehended by Philadelphia police officers about an hour later. (N.T. 4/2/03, pgs. 91-97). As the officers approached Locke, he put his hand in the black bag. (N.T. 4/2/03, p. 94). The officers ordered Anthony Locke to take his hand out of the bag multiple times. *Id.* When he finally responded to their order, the officers recovered a .40 caliber Taurus revolver. (N.T. 4/2/03, pgs. 95).

Trial Court Opinion (2003), pp. 1-2. Subsequently, on May 16, 2003, Judge Hughes sentenced petitioner to the maximum authorized sentence of 23 ½ to 47 years imprisonment. Petitioner did not file either a motion for reconsideration or a notice of appeal.

On December 17, 2003, petitioner filed a petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, *et seq.* The court appointed counsel, who subsequently filed an amended PCRA petition seeking reinstatement of petitioner's direct appeal rights due to trial counsel's alleged failure to heed petitioner's requests to pursue an appeal. Following an evidentiary hearing wherein both petitioner and trial counsel testified, the PCRA court denied the petition. On May 31, 2006, the Superior Court affirmed and, on February 22, 2007, the Pennsylvania Supreme Court denied allowance of appeal.

Petitioner filed the instant Petition for Writ of Habeas Corpus on June 13, 2007, alleging that (1) defense counsel rendered ineffective assistance in failing to file and perfect a direct appeal and (2) the trial judge erred in prohibiting petitioner from using the prison phone to contact defense

counsel.

II.     PETITION FOR STAY AND ABEYANCE

On April 18, 2007, just prior to the filing of his habeas corpus petition, petitioner initiated a second state PCRA action, raising multiple new claims of ineffective assistance of counsel, as well as the second of the two habeas claims raised here. To date, the state court has yet to rule on this petition. Accordingly, on July 11, 2007, petitioner filed a Motion for a Stay and Abeyance of his habeas petition in order to fully exhaust his state court remedies on his habeas claims. It is that motion which is initially before the Court.

Pursuant to the exhaustion requirement, before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his available remedies in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). In other words, a petitioner must invoke "one complete round of the State's established review process" before he may assert the claim on federal habeas review. Id. at 845. Exhaustion demands that a habeas petitioner "present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Porter v. Horn, 276 F. Supp.2d 278, 292 (E.D. Pa. 2003); Jones v. Frank, 28 F. Supp.2d 956, 961 (E.D. Pa. 1998).

Where a petitioner is "mixed" -- *i.e.* it contains both exhausted and unexhausted claims – the United States Supreme Court has held that a District Court may issue a stay to allow a petitioner to return to state court and exhaust his claims without fear of later being time-barred under the AEDPA. Rhines v. Weber, 544 U.S. 269, 276, 125 S. Ct. 1528, 1534 (2005). Nonetheless, the Court recognized that "[s]tay and abeyance, if employed too frequently, has the potential to undermine the[] twin purposes [behind the statute of limitations and the exhaustion doctrine]. Staying a federal

3

habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Id. at 277. Accordingly, it emphasized that stay and abeyance should be available in only "limited circumstances" when the district court determines both that there was good cause for the petitioner's failure to exhaust his claims first in state court and that the claims sought to be exhausted are not "plainly meritless." Id. In addition, the district court should place time limits on a petitioner's efforts to pursue exhaustion in state court. Id.

In the case at bar, petitioner concedes that he has not exhausted his second habeas issue, alleging that the trial judge erred in prohibiting petitioner from using the prison phone to contact defense counsel.[1] He contends, however, that this Court should stay his habeas petition so that he may exhaust this claim via his currently pending PCRA petition. His argument, though, fails on two grounds. First, petitioner has neglected to show good cause for not raising this claim earlier. Indeed, petitioner timely filed a PCRA petition in December of 2003 in order to pursue reinstatement of his direct appeal, yet failed to include this claim. He now offers no reason for not pursuing these claims on an earlier occasion.[2]

---

[1] In his currently pending PCRA petition, petitioner also raises six additional issues of trial and appellate counsel ineffectiveness. While respondents assume that petitioner seeks the stay and abeyance so as to exhaust these new issues and include them in his habeas petition, the Court disagrees. Despite the fact that petitioner filed his habeas petition after initiating his second PCRA action, these new issues were not raised to this Court. Likewise, in his Petition for Stay and Abeyance, petitioner argues only that he seeks the stay in order to exhaust the issues currently in his habeas petition.

[2] Although not suggested in any filing here, petitioner makes claims of appellate counsel ineffectiveness in his now pending state PCRA petition. Presumably, he is referring to PCRA counsel, since he never filed a direct appeal. To the extent he would now contend that the good cause portion of the Rhines v. Weber test is satisfied by the missteps of PCRA counsel, his claim would be misplaced. It is well-established that there is no constitutional right to PCRA counsel. Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990 (1987). As such, cause cannot

Moreover, and perhaps more importantly, the purpose behind the stay and abeyance doctrine, which is to allow petitioner to return to state court and exhaust the available remedies so as to avoid having a petition dismissed as a mixed petition, would not be served in this case. It is well-settled that "if [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," the claims are likewise procedurally defaulted in federal court. Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 (1991); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). The procedural default barrier, in the context of habeas corpus, precludes federal courts from reviewing a state petitioner's habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729. "In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional . . . [b]ecause this Court has no power to review a state law determination that is sufficient to support the judgment." Id. Although the issue of procedural default is best addressed by the state courts in the first instance, a federal court may dismiss a petition as procedurally barred if state law would unambiguously deem it defaulted. Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).

Petitioner's pending PCRA petition is unequivocally untimely. The PCRA statute states that, "[a]ny petition under this subchapter . . . shall be filed within one year of the date the judgment becomes final . . ." 42 Pa.C.S.A. § 9545(b) (1998). As petitioner's judgment became final on June

---

be established by showing ineffectiveness of PCRA counsel. See generally Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (holding that the cause and prejudice exception to procedural default is not satisfied by a showing of ineffective PCRA cousnel)..

16, 2003,[3] he had until June 16, 2004, to seek collateral relief under this statute. The Pennsylvania Supreme Court has conclusively established that the one-year statute of limitations acts as a jurisdictional bar and is not subject to equitable tolling. Commonwealth v. Fahy, 737 A.2d 214, 222 (Pa. 1999). Accordingly, petitioner's current action, filed in April of 2007, was initiated past the expiration of his state time limits. In turn, the unexhausted claim becomes procedurally defaulted. As the very nature of a procedurally defaulted claim makes proper exhaustion impossible, the rationale for a stay and abeyance is moot. See Bivings v. Wakefield, Civ. A. No. 07-929, 2007 WL 1816484, *3 (E.D. Pa. June 22, 2007).[4] For these reasons, the Court denies the requested stay and abeyance and finds plaintiff's unexhausted habeas claim regarding the prohibition on phone use to be procedurally defaulted.

III.   MERITS OF REMAINING CLAIM

    A.   <u>Standard of Review</u>

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> An application for a writ of habeas corpus on behalf of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless that adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

---

[3] See 42 Pa.C.S.A. § 9545(b)(3) (judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.).

[4] Notably, petitioner has not even suggested that one of the exceptions to the statute of limitations in the PCRA statute would apply. See 42 Pa.C.S.A. § 9545(b) (1998). Nor has petitioner raised any facts which would establish the cause and prejudice or fundamental miscarriage of justice exceptions to the procedural default rule. See Coleman, 501 U.S. at 750 (to survive procedural default in the federal courts, the petitioner must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

>application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>28 U.S.C. § 2254(d).

The United States Supreme Court interpreted this statute and more clearly defined the two-part standard of review in Williams v. Taylor, 529 U.S. 362, 404-405, 120 S. Ct. 1495 (2000). Under the first prong of the review, a state court decision is "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States," (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." Id. at 405. Pursuant to the second prong, a state court decision can involve an unreasonable application of Supreme Court precedent: (1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context should apply." Id. at 407-408. Under this clause, however, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly-established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410.

> B.  Ineffective Assistance of Defense Counsel for Failing to File and Perfect a Direct Appeal

Petitioner's sole cognizable habeas claim alleges ineffective assistance of appellate counsel

for failing to file and perfect a direct appeal despite his direct request that counsel do so.[5] Ineffective assistance of counsel claims must be judged according to the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), which established a two-prong test. Id. at 687. Under the first prong, the petitioner must demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness." Id. at 688. This burden requires that the defendant identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment. Id. at 690. The reviewing court must then determine whether the identified acts or omissions were outside of the "wide range of professionally competent assistance." Id. Pursuant to the second prong, the defendant must prove that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 694. More specifically, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court has emphasized that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. at 695; see also Buehl v. Vaughn, 166 F.3d 163 (3d Cir. 1999).

In a claim of ineffective assistance of appellate counsel for failure to file a direct appeal, it is well-established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 478 120 S. Ct. 1029, 1035 (2000). "Counsel's failure to do so cannot be considered a

---

[5] Respondents correctly argue that to the extent petitioner premises his ineffectiveness claim on the contention that counsel should have, even absent a direct request from petitioner, filed a direct appeal, the claim is procedurally defaulted since it was never raised to the state courts. His allegation of ineffective assistance of counsel for failure to file a direct appeal in light of petitioner's express directive that he do so is, however, exhausted and properly before this Court.

strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." Id. On the other hand, a defendant who explicitly instructs his attorney against filing an appeal cannot later assert a valid ineffectiveness claim. Id. The United States Supreme Court likewise has declined to impose a constitutional mandate on counsel to even consult with his client regarding the filing of a direct appeal in all cases. Id. at 479-480. Rather, it held only that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

In the case at bar, petitioner presented this precise claim of ineffectiveness to the state courts during PCRA review. Upon conducting an evidentiary hearing during which both petitioner and defense counsel testified, the PCRA court denied the claim as meritless. Specifically, it found that the sentencing court offered to appoint new counsel to represent petitioner in lieu of trial counsel. Petitioner, however, rejected the offer, indicating that he wanted to retain his trial counsel for direct appeal. The PCRA court went on to note, however, that petitioner never communicated this desire to trial counsel and never otherwise contacted the court to have counsel appointed for purposes of direct appeal. Accordingly, it held that trial counsel was not the cause of petitioner's failure to file an appeal. PCRA court opinion, 8/09/05, at 2-3. The Superior Court, on appeal, affirmed this decision, reasoning as follows:

> [A] review of the PCRA hearing discloses the following course of events. Appellant took the stand and recalled telling the sentencing court that he was "retaining" trial counsel to handle his appeal, which manifested itself in written form addressed to trial counsel with copies mailed to the trial court and the clerk of courts. N.T. Hearing Volume 1, 12/20/04, at 10, 18 [footnote omitted]. Additionally, Appellant

9

> testified to meeting with trial counsel on the 19th day of May, 2003, and confirming "to put [his] appeal in." Id. at 16. Appellant never knew whether an appeal was filed by trial counsel because "when [Appellant] tried to call him his phone was disconnected." Id. at 18.
>
> In contrast to Appellant's account of events, trial counsel stated, "No he did not, not to me" when asked if Appellant requested that he file an appeal after sentencing. N.T. Hearing Volume 1, 12/20/04, at p. 29. Furthermore, trial counsel testified that the location of his office had not changed over the preceding year, he never received any letter from Appellant requesting him to take an appeal [footnote omitted], nor did he recall ever having a conversation with Appellant about filing an appeal. Id. at 29-30. If such had occurred, trial counsel said he would have told Appellant to pay for the cost of the trial first, and then an appeal would have been filed. Id. at 29-30.
>
> Given the disparity between Appellant's and trial counsel's recollection of events succeeding sentencing regarding seeking appellate review of the judgment of sentence, the PCRA court resolved the credibility issue in favor of trial counsel and denied Appellant's request for the reinstatement of his appeal rights *nunc pro tunc*. . . . We agree and note that the PCRA court, being the finder-of-fact and credibility assessor, has support in the record for its ruling denying Appellant's request to reinstate his appeal rights *nunc pro tunc*, and we will not invade its credibility bailiwick because there is record support for those determinations as well.

Superior Court Opinion (2006), pp. 3-5.

We find this decision to be neither contrary to nor an unreasonable application of federal law. Were this Court to hold another evidentiary hearing, we could perhaps come to a contrary factual determination and elect to credit petitioner's testimony that he directed trial counsel to file an appeal. That, however, is not our province. Pursuant to 28 U.S.C. § 2254(e)(1), we must defer to the factual findings of the state courts unless petitioner rebuts the presumption of correctness by clear and convincing evidence. Relying on that presumption and absent any proffer of contrary evidence by petitioner, we must accept that petitioner made no request of counsel to even represent him in an appeal, let alone file an appeal on his behalf. Moreover, we note that petitioner has not even

indicated to this Court what claims counsel should have raised on direct appeal or whether those claims were clearly so nonfrivolous as to impose a constitutional duty on counsel to consult with petitioner regarding an appeal.  Finding no basis for a grant of habeas relief, we deny the petition.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this *24th* day of *September*, 2007, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED.  There is no probable cause to issue a certificate of appealability.

/s/ *Charles B. Smith*
CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE